SAMUEL JOHNSON, Plaintiff in Error, *v.* ROBERT A. DONNELL et al., Defendants in Error.

### ERROR TO CLARK.

While the most usual mode of foreclosing mortgages is by ordering the mortgaged premises to be sold, yet this is by no means the only mode.

The power of strict foreclosure is frequently exercised, and indeed it is probably never refused where the interests of both parties manifestly require it, as is often the case; except in such a case, it never should be exercised. Such cases may frequently arise, as where the mortgagor is insolvent and the mortgaged premises are not of sufficient value to pay the debt and costs.

Although the statute regulates the terms of the redemption of mortgaged lands, sold under decrees for foreclosure, it does not in terms prohibit strict foreclosures. And the court may well presume that it was not mere inadvertence on the part of the legislature, that the power to enter such decrees was not taken away.

In a strict foreclosure, it is not necessary for the decree to specify in whom the legal title to the land shall be vested. By barring the equity of redemption, it confirms the title in the mortgagee.

Respondent cannot object to the sufficiency of the complainant's proof, where the bill has been taken as confessed.

It was not erroneous to allow the sheriff, in the court below, to amend his return, after he had gone out of office, and after the decree had been entered.

THIS cause was decided at April term, 1852, of the Clarke Circuit Court, before HARLAN, Judge.

The opinion contains a statement of the case.

CONSTABLE and DULANY, for plaintiff in error.

STUART and EDWARDS, for defendants in error.

CATON, J. This is a bill for the foreclosure of a mortgage, and sets forth in the usual way the execution of the notes and mortgage, and the non-payment of the money. In addition to this, it also avers that the mortgaged premises are not of value sufficient, and if sold would not pay the amount due on the mortgage, and costs, and that the mortgagor has no means of paying any balance which might remain due after the sale of the mortgaged premises, and prays for a strict foreclosure. The bill was taken for confessed, proofs were heard by the court, and a decree of strict foreclosure was entered.

It is now insisted, that under our statute the court had no right to decree a strict foreclosure, but was bound to order the premises to be sold. The twenty-fourth section of the fifty-seventh chapter R. S. is relied upon to sustain this position. It is this : " In all cases hereafter where lands shall be sold under and by virtue of any decree of a court of equity for the sale of mortgaged lands, it shall be lawful for the mortgagor of such lands, his heirs, executors, administrators, or grantees, to redeem the same in the manner prescribed in this chapter, for the redemption of lands sold by virtue of executions issued upon judgments at common law; and judgment creditors may redeem lands sold under any such decree, in the same manner as is prescribed for the redemption of lands, in like manner sold upon executions issued upon judgments at common law." While it is admitted that this section does not in terms forbid the courts to exercise the power which they had been in the constant habit of exercising as a part of their undoubted jurisdiction, by granting decrees of strict foreclosures upon mortgages, yet it is argued that such power is impliedly taken away.

Johnson *v.* Donnell et al.

I certainly have never been able so to understand that statute. Previous to its passage, the most usual mode of foreclosing mortgages was by ordering a sale of the mortgaged premises, at some future time to be fixed by the discretion of the court, either reserving the right to the mortgagor to redeem from that sale within a specified time, or making the sale absolute. When no right of redemption was allowed, the sale was usually fixed for a distant day, say six months or a year, or the next term of the court, but in case the decree provided for a redemption from the sale, the premises were ordered to be sold as soon as the requisite notice could be given. This statute was evidently designed to fix a uniform rule for such cases, and to leave it no longer to the discretion of the courts. The statute plainly does this, and it professes to do nothing more. While the most usual mode of foreclosing mortgages was by ordering the mortgaged premises to be sold, yet this was by no means the only mode. The power of strict foreclosure was frequently exercised, and indeed it was probably never refused, where the interests of both parties manifestly required it, as is often the case. Except in such a case it never should be exercised, and in such cases only, I imagine, would this court have sanctioned it before the passage of the statute above quoted, and it certainly could not do so now. Such cases, however, may frequently arise. As where the mortgagor is insolvent and the mortgaged premises are not of sufficient value to pay the debt and costs. In such a case it is for the interests of the mortgagor that the premises be taken in absolute discharge of the whole mortgage debt; for in this country there are but few, indeed, so desperately insolvent that they do not consider that their interest is promoted by the discharge of any portion of their indebtedness. Nor, on the other hand, can it prejudice their interests to have the land applied without a sale, when the value of the premises does not exceed the amount of the mortgage debt and costs. In such a case, also, the interest of the mortgagee may be clearly promoted by taking the land in absolute discharge of the debt. While he loses a claim against an irresponsible party which is practically of no value, he gets a clear title to the premises, if the debt is not paid within the time prescribed by the decree.

Such was the case here. The mortgagor had nothing else to pay with but this land, which was not of sufficient value to pay the debt and costs. This state of facts appears in the complainant's bill, which prays for a strict foreclosure. The mortgagor did not dispute these facts, and made no objection to the relief sought. He did not appear at all, but allowed the bill to

be taken as confessed, and it is now too late to object to the truth of those statements. In support of the allegations of the bill, the court heard proof. What that proof was, we are not informed by the record, but we may well presume in favor of the decree, that the proof was in corroboration of the bill. At any rate it has been repeatedly decided by this court, that the respondent cannot object to the sufficiency of the proof, where the bill has been taken as confessed. This record, then, justifies the conclusion, that it was for the interest of both parties at the time the decree was rendered, that a strict foreclosure should be decreed. And so long as such cases might frequently arise, we may well presume that it' was not mere inadvertence on the part of the legislature, that the power to enter such decrees was not taken away. This power may possibly be abused by the courts. If this were a valid argument against the existence of the power, in order to satisfy it, it would be necessary to deprive the courts of all power to do justice as well as injustice, for there are very few powers which are held, either by courts or others, which may not be abused and perverted. But such an argument is more properly addressed to the legislature than to the courts themselves. Before the passage of the law quoted, the power here exercised did exist, and this statute did not pretend to take it away or abridge it, and the conclusion necessarily follows that it still exists. In this case we cannot say that the decree should be reversed, because it was improperly exercised. It must, therefore, meet with our approval.

Some other objections were raised to the decree, which have been examined and found to be untenable. One is that the decree does not specify in whom the title to the land shall be vested; that was not necessary. By barring the equity of redemption it confirms the title in the mortgagees; the title conveyed by the mortgage, which was before conditional, now becomes absolute. It was also objected, that the decree does not specify to whom the money should be paid, in default of which the equity of redemption was foreclosed. The money was decreed to the complainants who were the mortgagees, and this should have been satisfactory evidence to the defendant, that the money was to be paid to them. Had he so paid it, he would have saved his title.

The sheriff was allowed to amend his return after he had gone out of office, and after the decree had been entered. The objection to this is fully answered by the decision of this court in the case of Morris *v.* Trustees of Schools, and it is unnecessary again to discuss the question here.

The decree of the Circuit Court must be affirmed.

*Decree affirmed.*