# FEURT v. CASTER, Appellant.

## Division One, April 1, 1903.

1. **Homestead:** INTENTION TO ESTABLISH. Mere intention, after the loss by mortgage and foreclosure sale of a former homestead, to establish a homestead upon an adjoining tract of land, is not sufficient to make the land the homestead of a head of a family who has only a curtesy in it. There must be some visible occupancy and appropriation of the land to homestead purposes, such as a house or other shelter or abiding-place suitable for human habitation.

2. **Process:** AMENDMENT AFTER JUDGMENT: RULE. The power to allow a sheriff to amend his return after judgment is vested in the court to be exercised upon such terms as may be just; the officer is not given an absolute power to amend.

3. **Discretion of Trial Court:** INTERFERENCE BY APPELLATE COURT: PRACTICE. The rulings of a trial court in instances where it is vested with a sound judicial discretion are not conclusive upon the appellate court, but it will interfere therewith, not when such discretion is a personal one, but when it is a judicial discretion, and because the ultimate responsibility of every judgment rests upon the court of final resort to which the case is taken.

4. ———: AMENDMENT OF SHERIFF'S RETURN. The sheriff's return showed that he had served a summons by leaving a copy of the writ with a member of defendant's family over sixteen years of age, but did not show that he had left also a copy of the petition. The officer positively testified that the papers consisted of a copy of the writ and a certified copy of the petition, that he had never before or since served any other papers on defendant, but he was unable to remember on which member of defendant's family he served the papers, or whether it was a man or a woman, an old or a young person, but he was sure it was upon some one who was over sixteen years old whom he found at defendant's house, and who was pointed out to him by defendant's little boy as a member of his family. At that time the only member of defendant's family over sixteen years old was a son, and he swears the service was not on him. *Held*, in a suit in ejectment for the recovery of the land sold under the judgment against the defendant in that case who is plaintiff in the ejectment, that, under the circumstances, it can not be said that the court failed to exercise a sound judicial discretion in refusing to allow the sheriff to amend the return to show that he left a copy of the petition also.

5. **Service on Member of Family:** VOID JUDGMENT: COLLATERAL
ATTACK. Where the service is on a member of the defendant's family,
and is made by leaving with such member only a copy of the writ,
and not a copy of the petition too, a judgment by default is void,
and can be collaterally attacked in a subsequent suit in ejectment.
Such service is a substituted or constructive service, and therefore the
requirements of the statute must be substantially complied with or
the judgment by default will be void.

6. ———: ———: RECITALS IN JUDGMENT. A judgment reciting that
the defendant "was duly summoned as the law directs" is not con-
clusive on defendant if the sheriff's return shows such recital is not
in fact true. After the party attacking the judgment has shown by
the return itself that the return did not give jurisdiction over the
person of defendant, it is incumbent on the party claiming title
under the judgment to show by other summons and return that
the service was good, or else the judgment by default will be
void.

Appeal from Daviess Circuit Court.—*Hon. Gallatin
Craig*, Special Judge.

AFFIRMED.

*Rollin J. Britton, Gillihan & Gillihan* and *J. W.
Peery* for appellant.

(1)   The court erred in permitting plaintiff to
state his intentions in respect to his homestead.   There
must be something more than mere intentions to impress
land with a homestead.   Stanley v. Baker, 75 Mo. 62;
Kaes v. Gross, 92 Mo. 647; Hofschmidt v. Gross, 112
Mo. 649; Thompson on Homestead, sec. 267; Smith v.
Bunn, 75 Mo. 559.   (2) The court erred in permitting
plaintiff to attack collaterally in this suit the return in
the case of Ellen Gilreath against him under which
judgment was rendered and the land in question sold to
defendant.   McGrew v. Foster, 54 Mo. 258; Phillips v.
Evan, 64 Mo. 18; Hallowell v. Page, 24 Mo. 590; Del-
linger's Admr. v. Higgins, 26 Mo. 180; Reeves v.
Reeves, 33 Mo. 29; Jeffries v. Wright, 51 Mo. 215.   (3)
The court erred in refusing to permit the sheriff to

amend his return showing that a copy of the petition and summons was left at the usual place of abode with a member of his family over the age of fifteen years in the case of Ellen Gilreath against plaintiff under which judgment was rendered and the land in question sold to defendant, under general execution.   Secs. 670, 672 and 673, R. S. 1899; Blaisdel v. Steamboat Wm. Pope, 19 Mo. 158; Scruggs v. Scruggs, 46 Mo. 271; Miles v. Davis, 19 Mo. 408; Groner v. Smith, 49 Mo. 318; Webster v. Blount, 39 Mo. 500; Corby v. Burns, 36 Mo. 194; Stewart v. Stringer, 45 Mo. 116; Mongold v. Dooley, 89 Mo. 111; Dunham v. Wilfong, 69 Mo. 355; Phillips v. Evans, 64 Mo. 18; McGrew v. Foster, 54 Mo. 258. (4)   The court erred in permitting verbal evidence to contradict the judgment in the case of Ellen Gilreath against plaintiff under which the land in question was sold to defendant.   State ex rel. v. Donegan, 12 Mo. App. 190; Gray v. Bowles, 74 Mo. 419; Yates v. Johnson, 87 Mo. 213; McClellan v. Railroad, 103 Mo. 295; Beckner v. Lynn, 107 Mo. 217.   The judgment in favor of Ellen Gilreath shows that Benjamin F. Feurt in that case "was duly summoned as the law directs."   And when it appears by the record of a judgment that the court which pronounced it had jurisdiction of the person of defendant and of the subject-matter of the suit, it will not be held void in a collateral proceeding.   Holt County v. Harmon, 59 Mo. 166; Bailey & Woods v. McGinnis, 65 Mo. 362; Rumfelt v. O'Brien, 57 Mo. 569. The verity of a judgment of the circuit court can not be impeached collaterally.   Freeman v. Thompson, 53 Mo. 183.

*Selby & Givens* for respondent.

(1)   It was not error to permit respondent Feurt to testify as to his intentions as to his homestead interest with respect to the forty acres of land in controversy.   Mills v. Mills, 141 Mo. 195; Beasley v. Blake,

153 Mo. 657; Kendall v. Powers, 96 Mo. 142. (2) (a) Under the facts in this case, the court did not abuse its discretion, but exercised it wisely and judiciously in refusing to permit the amendment of the sheriff's return in the case of Gilreath v. Feurt. (b) And, unless it manifestly failed to do so, the appellate court will not interfere with its exercise of this discretionary power. Brecht v. Corby, 7 Mo. App. 300; Fogg v. Bowman, 5 Mo. App. 579; Bank v. Doak, 75 Mo. App. 332; Blodgett v. Shafer, 94 Mo. 652; Eidemiller v. Kump, 61 Mo. 340; State v. Parker, 106 Mo. 217; Railroad v. Atchison, 137 Mo. 218; Hopper v. Southern Hotel Co., 142 Mo. 378; Chouquette v. Railroad, 152 Mo. 257; Kuenzel v. Nicholson, 73 Mo. App. 14. (3) The judgment in the case of Ellen Gilreath v. Ben F. Feurt is void, because of the failure to obtain jurisdiction over the person of defendant Feurt therein. Hewitt v. Weatherby, 57 Mo. 276; Brown v. Langlois, 70 Mo. 226; Bank v. Suman, 79 Mo. 530; Haley v. Railroad, 80 Mo. 112; Laney v. Garbee, 105 Mo. 355; Williams v. Monroe, 125 Mo. 574; Harness v. Cravens, 126 Mo. 233; Young v. Downey, 150 Mo. 317; Westmeyer v. Gallenkamp, 154 Mo. 28; Gamasche v. Smythe, 60 Mo. App. 164. (4) And, hence, is open to collateral attack. Hewitt v. Weatherby, 57 Mo. 276; Brown v. Langlois, 70 Mo. 226; Cloud v. Pierce City, 86 Mo. 357; Blodgett v. Shafer, 94 Mo. 652; Laney v. Garbee, 105 Mo. 355; Williams v. Monroe, 125 Mo. 588; Harness v. Cravens, 126 Mo. 233; Winningham v. Trueblood, 149 Mo. 572; Young v. Downey, 150 Mo. 317. (5) Although the record entry of the judgment in the case of Gilreath v. Feurt contains the jurisdictional recital "duly summoned as the law directs," it is competent to overthrow such recital by showing, by other parts of the record of equal dignity and importing equal verity, that such recital is untrue. And the return of the sheriff is a part of the record itself, and may, when radically defective, be used to rebut the presumption arising from recitals of service contained in other portions of the

record.   Cloud v. Pierce City, 86 Mo. 357; Blodgett v. Shafer, 94 Mo. 652; Higgins v. Beckwith, 102 Mo. 456; Laney v. Garbee, 105 Mo. 355; Bell v. Brinkman, 123 Mo. 370; Williams v. Monroe, 125 Mo. 574; Hutchinson v. Shelley, 133 Mo. 400; Rosenberger v. Gibson, 165 Mo. 16.   (6)  And, where there is a conflict between the recital in a judgment and that in a return, the recital in the return will govern.    Cloud v. Pierce City, 86 Mo. 357; Blodgett v. Shafer, 94 Mo. 652; Adams v. Cowles, 95 Mo. 501; Hutchinson v. Shelley, 133 Mo. 612.

MARSHALL, J.—Ejectment for the northwest quarter of the northwest quarter of section 5, in township 59, range 28, in Daviess county.   The petition is in the usual form, and ouster is laid as of January 2, 1900.   The answer is a general denial.   Upon the trial below it was admitted that Mrs. Nancy C. Feurt is the common source of title; that she was the wife of the plaintiff at the time of her death, and that she died seized of an indefeasible estate in fee simple of the land. She died in April, 1889, intestate, leaving surviving her the plaintiff, her husband, and seven living children born of that marriage.   For about ten or eleven years after her death, the plaintiff had possession of the land. It adjoined a tract of 160 acres owned by him, and he used this land in connection with his land.   There were no houses or other buildings upon this land, but it was under fence.   The plaintiff resided on his 160 acres, with his family, and it was his homestead.   He says he farmed this land in connection with his homestead. There was a deed of trust on his land, which was foreclosed in April, 1897, and was bought in by the bank, the *cestui que trust,* and at the same time he conveyed the land to a trustee for the bank.   So the plaintiff lost his own land.   The defendant purchased from the bank the 160 acres of land it had thus acquired from the plaintiff.   Thereupon the plaintiff removed from his

former homestead and rented a farm about a mile and a half therefrom and moved his family thereto, and has ever since resided there.   Over the objection of the defendant, the plaintiff was permitted to testify that he intended to keep the land in question as his homestead, and to build thereon and to return thereto as soon as he built, but had been financially unable so far to do so. When the plaintiff removed from the 160 acres, the defendant, the new owner, went into possession thereof in October or November, 1899.   He then purchased from the plaintiff ''the crop and stalk field'' on the land in controversy, and went into the possession thereof. Thereafter on December 16, 1899, the defendant became the purchaser of the right, title and interest of the plaintiff in the land in controversy, at the sheriff's sale thereof under execution, upon a judgment rendered on September 14, 1896, by the circuit court of Daviess county, in favor of Ellen Gilreath, the mother of the plaintiff's deceased wife, against the plaintiff.

Thus the plaintiff claims a life estate by the curtesy in the land, which he contends was not subject to execution, because he had established his homestead thereon, and the defendant claims as assignee of his estate by the curtesy under the judgment, execution and sale aforesaid.

The plaintiff claims that the judgment is void, and therefore may be attacked in this collateral proceeding, because the return of the sheriff on the summons issued in the case of Ellen Gilreath against him was insufficient in law to confer jurisdiction over his person, in that it simply recited:   ''I hereby certify that I executed the within writ in the county of Daviess, State of Missouri, on the 21st day of August, 1896, by leaving a copy of the same at the usual place of abode of Benjamin F. Feurt, with a member of his family over the age of sixteen years,'' while the statute requires not only that a copy of the writ shall be served upon the defendant, but also a copy of the petition shall be served upon him,

and this return does not show that a copy of the petition was so served upon the defendant in that case (the plaintiff in this case) and therefore the court never had any jurisdiction to render a judgment against the defendant in that case, and the judgment is void, and hence, open to collateral attack.

On the other hand, the defendant claims that the land in controversy never was the homestead of plaintiff, and hence his estate by the curtesy was subject to execution; and, further, that the judgment aforesaid is not void, but only voidable or irregular, and that such irregularities were only subject to attack by the defendant in that case itself, and are impervious to attack in this collateral case; and, also, that the trial court erred in refusing to permit the sheriff to amend his return so as to show that a copy of the petition as well as of the writ was served on the defendant in that case. The defendant offered the evidence of the deputy sheriff who served the writs, which tended to show that a copy of the petition was attached to the writ, and that he served both at the same time by leaving them at the defendant's usual place of abode with a member of his family over the age of sixteen years, but the deputy sheriff could not remember who such person was or whether it was a man or woman, but was certain that whoever it was was over the age of sixteen years. He also said he never served any other writs upon the plaintiff herein. On the other hand, the plaintiff proved by his stepdaughter, Mrs. Sinnie Cathcart, that some one, she could not say who, gave her some papers, she did not know what they were, and asked her to give them to her stepfather, the plaintiff, and that she did not do so. She also said she would be nineteen years old on April 5, 1901. The writ in question was served August 21, 1896. So that she was only fourteen years old at the time of the service. On motion of the defendant, however, the court struck out all her testimony, because she did not identify the person who served the papers,

as being the deputy sheriff who served the writ in question.    Hence, her testimony is not open to consideration in this case in this state of the record.

The defendant, however, contends that the sheriff had a right to make the amendment, and that evidence that the proposed amendment was untrue was inadmissible, for the reason that if the amended return be false the party aggrieved would have a remedy on the sheriff's bond, just as if the original return had been as the proposed amendment contemplated, and that such remedy is exclusive. *Per contra,* the plaintiff claims that such amendment is not a matter of right with the officer, and can only be made by leave of court granted in the exercise of a sound judicial discretion, and that it ought not to be allowed in this case, because a right of action against the sheriff on his bond is now barred by limitation.

The trial court entered judgment for the plaintiff, and the defendant appealed.

## I.

The plaintiff had no homestead rights in the property in controversy.    It was under fence, but without any house or other shelter or abiding place suitable for human habitation; and there were no visible signs on the premises to give notice to the officer charged with the execution of the writ, that it was or might be the homestead of any one.    It had never been the plaintiff's homestead.    For years he had lived upon the one hundred and sixty acres that belonged to him and that adjoined this land, and he had farmed this land, but it was in no sense his homestead.    Under the statute he was only entitled to one hundred and sixty acres as a homestead (R. S. 1899, sec. 3616), and the land he owned and lived on filled the complement of the law's provision for a homestead.    He sold or lost his home, and two years before his curtesy in this land was sold, he moved

away from his former home and rented a farm about a mile and a half therefrom. He says he intended establishing his homestead on this land, but had been financially unable to do so. Conceding all this, mere intention to establish a homestead upon a tract of land is not sufficient in law. There must be some visible occupancy and appropriation of the land to homestead purposes. [St. Louis Brewing Assn. v. Howard, 150 Mo. l. c. 451, and cas. cit.]

## II.

It is contended that the trial court erred in refusing to allow the sheriff to amend the return upon the summons in the case of Mrs. Gilreath against the plaintiff.

Two reasons are urged in support of this contention: first, that the sheriff had an absolute right to amend, being liable on his bond if the amended return be false, and therefore evidence that the proposed return is untrue is inadmissible; and, second, that under the evidence adduced in support of the application for leave to amend the return, the court ought, in the exercise of a sound judicial discretion, to have permitted the amendment.

The defendant cites Phillips v. Evans, 64 Mo. l. c. 23, as authority for his first contention aforesaid. In that case it is said: "The return of the officer is conclusive, as to the facts therein recited, except in an action for a false return . . . And the same reasons which would forbid any contradiction of the returns when made, must operate with equal and controlling potency in precluding evidence to show that a proposed amendment was untrue."

Substantially the same rule was laid down in Stewart v. Stringer, 41 Mo. l. c. 404. But on second appeal of the same case (45 Mo. 113) the power of a sheriff to amend a return without due leave of court was denied.

And in Scruggs v. Scruggs, 46 Mo. l. c. 273, it was said:

"The right of a sheriff to amend a defective return, on leave of the court, is beyond question, and it makes no difference that he is out of office. Such amendments, in appropriate cases, are allowed even on application of the sheriff's administrator. And there is no specific limitation of time within which this class of amendments must be made; although, after a lapse of years, the court should grant applications with great caution, lest the rights of innocent third parties should be injuriously affected. Such applications are not granted as a matter of right. The granting of them rests in the exercise of a sound discretion on the part of the court. 'Amendments of this description,' say the court in Johnson v. Day, 17 Pick. 108, 'are not regulated by any certain rules; but the court is bound in every case to exercise a sound discretion, and to allow or disallow an amendment, as may best tend to the furtherance of justice. The forms of the court are always best used when they are made subservient to the justice of the case.' [Blaisdell v. Steamer Wm. Pope, 19 Mo. 157; Webster v. Blount, 39 Mo. 500; Stewart v. Stringer, 45 Mo. 113; Welsh v. Joy, 13 Pick. 477; Fowble v. Walker, 4 Ohio 64; Gwynne on Sheriffs, 471; Haven v. Snow, 14 Pick. 28.]"

In McClure v. Wells, 46 Mo. l. c. 314, it was said: "Leave should be granted to amend the return in accordance with the facts. Such amendments are always freely allowed in aid of a judgment, although denied where their effect is to create error."

In addition to this, any doubt that may heretofore have existed by reason of the divergent views expressed in the cases cited is removed and the question set at rest by sections 657 and 660, Revised Statutes 1899, which provide that before or after final judgment "the court may, in furtherance of justice, and on such terms as may be just, amend," if after judgment, "in affirmance of

such judgment'' and if before judgment ''in further-
ance of justice,'' ''any record, pleading, process, entries,
*returns,* or other proceedings in such cause,'' etc.

By these statutes the power to allow amendments
is vested in the court, to be exercised upon such terms
as may be just, and the officer is not given any absolute
power of amendment, and this must hereafter be taken
as the rule of law in such cases.

The second contention is not so easy of solution.
The trial court refused to permit the sheriff to amend
the return, because he could not identify the person
upon whom he served the papers.   As herein stated
such amendments are allowed in the exercise of a sound
judicial discretion, but as well said in McClure v. Wells,
supra, ''such amendments are always freely allowed
in aid of a judgment.''   And whilst this court is always
loath to interfere with discretionary rulings of trial
courts, nevertheless such rulings are not conclusive
upon this count, and where they are interfered with it is
because that discretion exercised by the trial judge is not
a personal discretion, but a judicial discretion, and be-
cause the ultimate responsibility for every judgment
rests upon the court of final resort to which the case is
taken, and therefore that court is in duty bound to ap-
prove or reject all rulings of lower courts even when
made in the exercise of a judicial discretion.   [17 Am.
and Eng. Ency. of Law (2 Ed.), pp. 844-5 and cases
cited in notes.]

It is with these principles in mind that the decision
of the question under consideration is approached and
reached.

It is certain that some sort of papers were left by
some one for the plaintiff at his usual place of abode,
about the time the case of Mrs. Gilreath against the
plaintiff was begun.   The deputy who served these
papers swears positively that those papers consisted of
a copy of the writ and a certified copy of the petition
attached to the writ, for he says he remembers stopping

in the shade to rest his horse just before he reached the plaintiff's house, and that he took the papers out of his pocket and examined them to see that they were all right and then put a rubber band around them, and proceeded to the plaintiff's house. He also swears that he never served any other papers on the plaintiff or had any to serve on him at any other time. He also remembers that after leaving the plaintiff's house he proceeded further on his way and served a summons upon a neighbor, to serve on the grand jury. But he is unable to remember upon what member of the plaintiff's family he served the papers, and does not know whether it was a man or a woman, an old or young person, but is sure it was upon some one who was over sixteen years old, whom he found in the plaintiff's house, and who was pointed out to him, by the plaintiff's young son, whom he found at the front fence, as a member of the family.

It appears by other testimony that at the time of the service the plaintiff's family consisted of his son, Gabe Feurt, aged twenty years, his stepdaughter, Mrs. Sinnie Cathcart, aged fourteen years, his son, Frank Feurt, aged eleven years, and his daughters Bertha and Mary, aged ten and three years, respectively. Gabe Feurt swears the papers were not served on him. Mrs. Sinnie Cathcart said some one, she did not know who, gave her some papers, she did not know what, at a time she could not specify, and told her to give them to her stepfather and that she did not do so. Upon motion of the defendant her testimony was struck out because of her inability to identify the person who served the papers on her. And this ruling was unquestionably correct, in the abstract, but taken in connection with the testimony of the deputy sheriff, it is not altogether clear that it was incompetent. The objection that she could not identify the person goes rather to the probative force of her testimony than to its competency in this case, where it appears on all sides that there never was but

one set of papers served upon the plaintiff. The testimony of the deputy sheriff made it sure what papers were served, and when they were served, but left it uncertain upon whom they were served, while the testimony of Mrs. Cathcart cleared up that uncertainty, by showing that the papers were served upon her and that she was at that time only fourteen years old. Hence, the testimony of these two witnesses related to the same and the only transaction of this kind that ever happened, and the one was the fitting complement of the other. But the defendant moved to strike out Mrs. Cathcart's testimony, and so he can not complain, and the plaintiff submitted to the ruling, so he can not complain. This leaves the application of the sheriff to amend supported only by the testimony of the deputy sheriff; and he is unable to say upon whom he served the papers. Gabe Feurt was the only member of the plaintiff's family who was over sixteen years old at that time, and he swears the service was not on him. It is shown by other testimony that Mrs. Cathcart was there at the time and that she was only fourteen years old.

Under such a showing it can not fairly be said that the trial court failed to exercise a sound judicial discretion in refusing to allow the sheriff to make the amendment proposed. It would be a wise provision of law if the officer serving process upon a member of a family should be required to state in his return the name of such member of the family.

## III.

This leaves only the question whether the judgment against the plaintiff and in favor of his mother-in-law, Mrs. Gilreath, under which the defendant claims title, was void or only voidable.

The circuit court refused an instruction asked by the defendant to the effect that the judgment could not be attacked collaterally, and also a peremptory instruc-

tion to find for the defendant, and entered a judgment for the plaintiff, thus holding the judgment to be void. This conclusion of the trial court was right.   For whatever may be the true rule where the service is on the defendant in person, but not in accordance with the provisions of the statute (Leonard v. Sparks, 117 Mo. l. c. 110), the service in this case was not on the defendant, but was on a member of his family, and according to the greater weight of authority and the better reason (19 Enc. Pl. and Pr., p. 613, et seq., and cases in notes), and according to the decisions of this court, interpreting the third paragraph of section 570, Revised Statutes 1899, which provides for service by leaving a copy of the writ and petition at the defendant's usual place of abode with a member of his family over the age of fifteen years, such service is a substituted or constructive service, and therefore the requirements of the statute must be substantially complied with or a judgment by default will be void.

In Laney v. Garbee, 105 Mo. 355, the service was "by delivering a certified copy of this writ and the petition to a member of John Laney's family over the age of fifteen years." It omitted to say "at the usual place of abode." This court said: "The service, as shown by the return of the sheriff, was not according to any method known to the law, and was equivalent to no service at all.   The third clause of section 3689, Revised Statutes 1879, under which, doubtless, the service was attempted, required a copy of the petition and writ to be left 'at the usual place of abode' of defendant, 'with some person of his family over the age of fifteen years.' The service here provided is constructive, and must conform, at least substantially, to the requirements of the statute.   [Bank v. Suman, 79 Mo. 539; Brown v. Langlois, 70 Mo. 226; Blodgett v. Schaffer, 94 Mo. 652.]   It is insisted that the manner of service can not be shown to contradict the recitals of the judgment. If the entry of the judgment upon the books of the court

constituted all the record of the case, the contention would have weight. That is not the case. The return of the sheriff is as much a part of the record as the judgment entry. The recitals of the service, contained in the judgment, can not import greater verity than the return itself shows.

"Since the decision in the case of Cloud v. Pierce City, 86 Mo. 357, where the question was exhaustively considered, it has been held in this State, even in collateral proceedings, that the jurisdictional recitals of a judgment of due service of process will be controlled by, and must yield to, the service as it appears upon the whole record. The recitals of the judgment will be deemed to refer to the kind of service shown by other parts of the record. [Milner v. Shipley, 94 Mo. 106; Adams v. Cowles, 95 Mo. 506; Crow v. Meyersieck, 88 Mo. 415; McClanahan v. West, 100 Mo. 321; Blodgett v. Schaffer, 94 Mo. 671.]

"The service of process in this case was wholly insufficient and unauthorized by law, and in consequence, the court never obtained jurisdiction of the person of defendant therein, and the judgment rendered was without validity, force or effect, and defendant acquired no title by the sale and sheriff's deed thereunder."

This decision was followed in Laney v. Sweeney, 105 Mo. 360; Williams v. Monroe, 125 Mo. l. c. 584; Harness v. Cravens, 126 Mo. l. c. 253; St. Louis v. Flynn, 128 Mo. l. c. 423; Rosenberger v. Gibson, 165 Mo. l. c. 23.

In the case last cited this court, per BRACE, J., said:

"Under the statute, a writ of summons may be served upon the defendant 'by leaving a copy of the petition and writ at his usual place of abode, with some person of his family over t' e age of fifteen years.' [R. S. 1899, sec. 570; R. S. 1, 9, sec. 3489.] This is constructive service, and the terms of the statute must be

substantially complied with. The service in this case is on all fours with the service in the case of Laney v. Garbee, 105 Mo. 355, the defect in the return in each being precisely the same, a failure to show that a copy of the petition and writ was left 'at the usual place of abode' of the defendant. That case is decisive on this question, and is in harmony with a long line of decisions. [Blanton v. Jamison, 3 Mo. 52; Smith's Admr. v. Rollins, 25 Mo. 408; Brown v. Langlois, 70 Mo. 226; Madison County Bank v. Suman, 79 Mo. 527; Laney v. Sweeney, 105 Mo. 360; Williams v. Monroe, 125 Mo. 574.] In that case it was held that a judgment by default on such a service was null and void, and so it must be held in this case. Hence, the plaintiff's judgment was subject to the defendants' attack, unless they were estopped from making it by the facts pleaded in the reply."

It is argued, however, that the judgment in this case recites that the defendant was "duly summoned as the law directs," and that this is conclusive, or at least can not be overthrown by the return offered in evidence because the plaintiff did not show that "the several fragments exhibited in evidence, constituted the whole record in the . . . case" (Rumfelt v. O'Brien, 57 Mo. 569).

If there was any other summons and return it devolved upon the defendant to show it, and thus overcome the case made by the plaintiff.

Touching the contention that the recital of the judgment that the defendant "was duly summoned as the law directs" is conclusive, it is only necessary to repeat what was said in Williams v. Monroe, 125 Mo. l. c. 584:

"We all agree that condemnation proceedings under these statutes are judicial, and that, when once the court has acquired jurisdiction over the persons and subject-matter, the judgment, if within the power of the court, is not open to collateral attack. [Union Depot

Co. v. Frederick, 117 Mo. 138; Leonard v. Sparks, 117 Mo. 103.]

"But this doctrine, when rightly understood, does not in the least shake the authority of those decisions in this State which holds that, although the record of a court of general jurisdiction recites that defendants have been duly served with process, it is competent to overthrow such recital by showing by other portions of the record of equal dignity, and importing equal verity, that such recital of service is not true. [Cloud v. Pierce City, 86 Mo. 357; Laney v. Garbee, 105 Mo. 355; Milner v. Shipley, 94 Mo. 106; Bell v. Brinkmann, 123 Mo. 270; 1 Freeman on Judgments (4 Ed.), sec. 125; Higgins v. Beckwith, 102 Mo. 456.]

"It requires no authority to establish the proposition that courts, even of general jurisdiction, can only acquire jurisdiction over parties defendant, by an observance of the modes of procedure prescribed by law, unless the parties waive service, and enter their voluntary appearance. In the additional abstract of evidence filed by respondent, and not denied by appellant, 'it appears that plaintiff was notified by publication of the time when the petition would be heard, and had received no personal notice of any sort at any time.' So that there is no question as to the effect of any appearance by herself or her attorneys. It appearing, then, that whatever process issued in this case was the act of the clerk in vacation prior to and in fact without the petition having ever been presented to the court, could it confer jurisdiction over the plaintiff and estop her from questioning it in a collateral proceeding, when these facts appeared of record?

"In Laney v. Garbee, 105 Mo. 355, we held that where the sheriff's return showed service only 'by delivering a certified copy of this writ and the petition to a member of John Laney's family over the age of fifteen years,' the judgment was void, the statute requiring

Vol 174 mo—20.

a copy of the petition and writ to be left 'at the usual place of abode' of the defendant 'with some person of his family over the age of fifteen years.' [Citing Bank v. Suman, 79 Mo. 538; Brown v. Langlois, 70 Mo. 226; Blodgett v. Schaffer, 94 Mo. 652.]

"If the failure of the executive officer to comply substantially with the mode prescribed for service of the writ, regular on its face, renders the service void where it is constructive, how can a service be held sufficient when the process or writ does not even emanate from the only authority clothed with power to set it in motion? In other words, not only must process be served in the manner prescribed by law, but the process itself must be the mandate of a court, judge or officer authorized by law to issue or require it to be issued. The stream can not rise higher than its source."

It follows that the service in this case was a substituted or constructive service, and not a personal service, and that as it was not made in the manner prescribed by statute in such cases, it was insufficient in law to support a personal judgment, and the court never acquired jurisdiction over the person of the defendant, and the judgment rendered in that case (Gilreath v. Feurt) is void, and, hence, open to attack collaterally. The defendant, therefore, acquired no title to the land at the sheriff's sale under that judgment, and is not shown to have any title otherwise, but the plaintiff has an estate by the curtesy in the land, and is entitled to a judgment for the possession thereof. The judgment of the circuit court is right and is affirmed. All concur.